Judge Silberman and may it please the court, my name is Tom Phail and I'm here for Petitioner Appellant Artis Gipson with a P. I want to begin by trying to simplify some of the complicated moving parts here and say that as goes the procedural default question in this case, so goes the statute of limitations question and the question of tolling, whether it be equitable or statutory. And the resolution of the procedural default question will cascade into a resolution of the start date of the running of the statute of limitations. If the start date of the statute of limitations is the date on which the Arizona Supreme Court denied the petition for review, then clearly Mr. Gibson is within the statute. If, on the other hand, the conclusion is that the time begins to run on the date the first motion for extension of time to file the petition for review expired, then there's nothing I can do to change the calendar. But the defenses to procedural default that we're all familiar with in other contexts, I think, drives the conclusion that one can ignore, as defenses to procedural default allow you in other cases, ignore the procedural default and treat the petition in state court as if it were always properly filed and therefore pending under 2244D2. And those defenses are familiar to us. First, the untimeliness finding of the trial court is demonstrably wrong and conceded. So we have to put that aside as really not on the table. The next issue is whether the untimeliness was caused in some direct way by abdication of counsel. Mr. Gibson asserted that it was and said so in the state court repeatedly. There's no dispute about that. Mr. Gibson said, after having an evidentiary hearing on the record and a transcript made, that he would like to have access to that transcript for purposes of filing a proper petition for review. The trial court, for reasons that remain a mystery, treated that motion as one not properly before it because Mr. Gibson was nominally represented by counsel and ignored it. The trial court sent it, according to her own minute entry order, to counsel for him to do what was necessary. And, of course, we know that he was never heard from again. I wonder if I've overlooked it, but I don't recall seeing anywhere where it says why he needed the transcript to proceed. Well, in his many motions for extension of time, the first one being his second motion for extension of time in the trial court and the various reiterations of those, both in the court of appeals and in the trial court a second or third time, he mentions explicitly and appends to the subsequent requests, his earlier requests, that he had tried, both telephonically and by letter, to contact counsel. Oh, I'm sorry. I did make my question clear. What was in the transcript that he needed that kept him from filing? Well, that's why – I don't see anywhere in the briefs or anyplace else where it says there was something in there that I needed that kept me from filing. Right. And that's a fair question, but I think it's misfocused. It's sort of like asking, in a Brady context, what is it that the State has that you need? Give me some specificity. Well, in Brady, we usually say there's something in there that is exculpatory. I'm saying what was it that was the smoking gun in the transcript that – Right. Well, he may not have articulated that. Or in the brief that you wrote. I don't see what's in there. Well, that's the merits, Judge. That's the merits of – Well, okay. So what are the merits? I mean, you say the judge should have, you know, basically he's entitled to tolling because he didn't have his transcript. Okay. Why did he need the transcript? Well, yes, Rule 32 requires specific citations to the record when one files his petition for review. That's clear. So – and I, as a PCR practitioner for 25 years, would not – would not pretend to file a petition for review after an evidentiary hearing in a PCR without access to the transcript so that I could make specific citations to the record. That's what he was asking for, a procedural right because he had a procedural obligation under Rule 32 to cite specifically to the record of the evidentiary hearing in support of his arguments. The transcript was eventually obtained. Right. And was there anything in there that was mentioned in the brief as – Well, Respondents have made a point of saying that Mr. Gibson only cited to two pages of the transcript, and therefore, they argue sort of retrospectively, he obviously had no need for it in the first place. It was okay to deprive this pro per petitioner not only of counsel, not only of fair and consistent rulings from the bench, but of the transcript of the evidentiary hearing that he said he needed for purposes of prosecuting his case in State court. And, you know, if not one, certainly all three give one pause, whether this person was treated fairly and whether he is entitled to our agreement that he has a defense to his procedural default. I'm not going to go into that. Counsel, the defendant, or I'll call him defendant, Mr. Gibson, clearly did not understand that the clock started in October 2007. Right? I mean, he certainly didn't understand that. He thought because of what he was doing to try and get the transcript that the clock was going to start sometime later. Yes, I believe that's true. Okay, now, one of the things that we certainly see at the district court level a lot are people in his position who will at some point write to the court and say, I can't file my 2254, 2255 on time because of various reasons. I'm wrongly put in solitaire. I can't get access to the library, et cetera. And, inevitably, what happens is, at least what I do, is I docket that as a timely petition and then say you can supplement it later. The question here is he didn't file anything within the year, but also he didn't even write the federal court for five months after he got the transcript. Judge, I can't plumb the thinking of my client at the time. But I suspect all of his effort and attention was focused in the State court trying to undo this chaotic mischief that was raining down on him. And it only occurred to him that it was time now to move the case forward after the Arizona Supreme Court denied review. That's probably true. And, you know, Diligent, assuming that he believed that time began at the date of the denial by the Supreme Court, Diligent isn't measured by how closely to the first day of the year a petitioner gets his petition to the district court. A fellow who files it on day one is as diligent as the fellow who files it on day 364. So it really doesn't help us much to figure out where he was within this putative range of time. Fair enough, counsel. But help in this regard is the concept of equitable tolling and a principled way of doing it. Obviously, this is a case in which the equities would lie with your client because he didn't understand something and he wasn't lawyer enough to file something on a protective basis. But are we to say that the reason why he's entitled to have equitable tolling until he got a transcript is that's the first day on which he was able to file an adequate 2254? And if we say that, how do we say that without opening the door for district courts to have case-specific determinations in every case as to when it was that this petitioner first had the opportunity to file an adequate petition? Well, first, Judge, I want to back off from our focus on equitable tolling as really the touchstone here. I think that if we apply the defenses to procedural default and look at this as a procedural default question and ask ourselves whether his default is excused, then we can conclude under 2244d2 that the petition was pending and properly filed the entire time, despite what the state court said. And that's what this court does all the time. It imposes a fiction on what happened in the state court, like they did in Williams v. Ryan, where the PCR petition was dismissed out at the trial court level. Nevertheless, the panel said, we're going to treat it as a fully exhausted petition and we're going to review it de novo. And I'm not suggesting, and I don't think I did in my briefs, that Mr. Gibson's ability to file a 2254 was necessarily tied to the acquisition of the transcript. And I say it in a cautious way. Because of all the good work he did in state court without one, I'm saying this man was diligent in the face of a hailstorm of opposition. And just because it happens to be the case that he didn't file his 2254 until he finally got the transcript doesn't mean that we're basing our argument on the fact that he didn't do it until he got it. The interesting thing about the acquisition of the transcript, Your Honor, is that it took place only after the state court proceedings were over and several months after. And what I put in my brief for purposes of driving it home is, and Mr. Gibson is the one who is being charged with lack of diligence, the state court, for whatever reason, could not or would not give him the basic tools of advocacy. And we have to judge him as a pro per, we have to judge him as one deprived of counsel, we have to judge him as one deprived of the transcript, and ask ourselves whether that procedural default that caused all that is going to be excused. And if it's not the transcript, what is the basis for excusing it? Well, the trial court's order denying the second motion for extension of time is factually wrong. Its other basis, that he had been granted an earlier extension of time and therefore was not entitled to a second one, is not adequate. An adequate procedural bar must be consistently applied. Mr. Walsh and myself and others I know are sometimes routinely. I don't see where she says she can't grant another one. No, she said she would not. She said the court finds that there was a previous extension. Correct. She doesn't say, and therefore I can't do it if I want to. That's correct, too. Okay. So it looks to me like the only reason she denied the second extension was her mistaken belief that it was untimely. Correct. Or that it already expired. That is correct. And that is conceded as not true. Right. And where do we go from there? What does that do for us? Well, if the basis for denying his extension of time to which he was arguably entitled simply cannot be defended, it falls into those things that qualify as defenses to procedural default. And I refer you to the Williams v. Ryan case, where the Respondents in that case could not point to a single instance in which a first motion for extension of time to file a PCR was not granted in the State of Arizona. And what I'm trying to say, under the rule of adequacy and independent State procedural bars, denial of a motion for because an earlier one had been granted is not a consistently applied rule, and it was factually wrong. Did you want to save a minute? Yes, I wanted to save a minute. Thank you, Judge. Thank you, Mr. Phelan. Good morning. Good morning. May it please the Court, Assistant Attorney General Robert Walsh appearing on behalf of the Respondents. Part of the problem with this case is that Mr. Phelan has conflated the doctrine of procedural default with the question of whether or not an application for post-conviction relief is statutorily told. And as I indicated in my brief, the two doctrines are not synonymous. And there are a lot of problems with what Mr. Phelan is asking this Court to do. He's essentially asking this Court to grant equitable tolling based on an erroneous State law ruling, which I think is problematic in and of itself because the United States Supreme Court in Wilson v. Cochran most recently and this Court in Pollin v. Stewart recognize that a Federal court cannot review or grant habeas relief or question of procedural default on State law grounds and say, sorry, State court, you misapplied your own rule. But that's partly what his claim relies upon. He's also asking the Court improperly to grant equitable tolling in a context that it has never been granted before. He hasn't cited a single case for his novel theory that he's entitled to 16 days of statutory tolling between the time the first extended deadline for filing a petition for review expired and when he filed his untimely petition for review at the Court of Appeals. He would have that time be tolled, and then the Arizona Court of Appeals' determination that his petition for review was untimely, he would then deem timely. Now, the United States Supreme Court has said in Allen v. Siebert most recently, but in Pace v. de Guglielmo and Safford, that when the State court says that a pleading is untimely, that is the end of the matter for statutory tolling purposes. Mr. Fallon's argument is basically saying you may do under the equitable tolling doctrine that which you cannot do under the statutory tolling argument, doctrine. And that cannot be the end run that the Supreme Court or any court has contemplated. And the reason why this is wrong is because when you look at the equitable tolling doctrine in the context of Federal habeas review, the focus is on the – well, I'm going to actually read a couple of things. There's one that I quoted from this Court's decision in Waldron Ramsey v. Paciolke. It says, The Supreme Court and the policies behind AEDPA require that equitable tolling be used only to protect diligent Petitioners facing extraordinary circumstances that prevent them from timely filing Federal habeas petitions. Federal habeas petitions. Now, the Supreme Court in Lawrence v. Florida makes a distinction, and I'm going to give you the page number. It's 130 Supreme Court Reporter at page 2563. And there in the majority opinion, Justice Breyer indicates that there's a difference between this Court looking at a procedural default and deciding whether or not this Federal court should tell the State court, look, we understand that the defendant violated your procedural rules, but we're going to excuse that because of some external circumstance. And the Court says that's a question of Federalism. But then it continues on by saying equitable tolling, by contrast, asks whether the Federal courts may excuse a Petitioner's failure to comply with a State court's interpretation of State law. Now, this Court has issued three opinions that I cited in my brief. Randall v. Crawford, I think, is the most closely on point. In Randall v. Crawford, an attorney failed to file a timely notice of appeal. It deprived Randall of any opportunity to have his appeal, a direct appeal in California court. And he tried to get equitable tolling on that basis. And this Court said all that effectively did was it meant that from the time that his deadline for filing a notice of appeal expired, he had one year from then to file his Federal habeas petition, essentially started the clock earlier. Now, this Court also came to a similar result in Gaston v. Palmer and also in United States v. Buckles. Now, the question is, did this affect his ability to file a timely habeas petition? Now, Mr. Fallon focuses on this transcript, and he says it's something that is absolutely necessary for him to have. I would agree it would be useful. But it's not required, first of all, even to file a Federal habeas petition. Rule 4C of the rules governing 2254 cases indicate all you need to do is summarize the claim. You don't need to summarize the facts. You don't have to have a transcript. The United States Supreme Court said in collateral review proceedings it's not constitutionally required in United States v. McCollum. We also have cases from the Seventh and First Circuits, Lloyd v. Vanatta and Donovan v. Maine, among other courts, saying that doesn't even grounds for equitable tolling when you don't have a transcript. This defendant attended the evidentiary hearing. He testified. He had also heard the testimony of the other witnesses. He had the affidavit of Jermaine Young, who was his alleged alibi witness. He also had the order from the trial court. So he had everything he needed. Now let me also make another point clear. He didn't need to have that transcript in order to file a timely petition for review. What we do know is that he filed a petition for review with the Court of Appeals and the Arizona Supreme Court without the benefit of that transcript. The only reason why he didn't do it was because he wanted to have it. He didn't think to himself, well, you know, the rules require that I actually provide citations to the transcript. I've indicated to this Court in my brief that that's not required. There's no guarantee or requirement that the trial court toll the time until he receives the transcript for filing a petition for review. That's not in Rule 32.8e. Well, I don't have any quarrel with anything you've just said. I'm concerned about Judge Duncan's apparently conceded error in thinking the motion for extension of time was it come after the first one had expired when it really hadn't. Right. What do we do about that? Well, first of all, I would say that at worst that's a misapplication of State law, and that falls into what I said at the beginning. Second, one thing I would also indicate to the Court is that that was not the only basis for the trial court's ruling. She said you had a prior 45-day extension. And that's what Magistrate Vos had noted in his report and recommendation. Well, she said you had a prior extension. She didn't say, I mean, that's all she said. It was an observation, really, wasn't it? No, I understood it as her saying that it was a 45-day. You already had a 45-day extension. Well, that's true. He had a 45-day extension. She didn't then, therefore, I can't give you another one. She didn't say that. No, no, she didn't. No, I mean, she made the observation. As a fact, she said you had a prior 45-day extension. She's reviewing what's happened in the case. I mean, this is neither here nor there, but, I mean, just to be fair about what the order says. Right. Am I overstating your contention that we simply can't grant Federal equitable tolling to Mr. Gibson? Yes, he didn't understand that the October 2007 action was the starting date. Yes, he was going around looking for the transcript, but you seem to be saying that on no facts, and we can always make up facts, could we grant equitable tolling. Is that what you're saying, or are you saying that these particular facts don't allow us to give equitable tolling to him? I'm not aware of any case that holds that a misapplication of State law that renders a State-directed appeal or some State proceeding terminated constitutes grounds for equitable tolling. Well, let me try and express myself, if I can. We all know that there was a mistake, et cetera, and I'm kind of forgetting that. I'm not talking about that. The action of the State court in October of 2007 started the clock, although the defendant didn't recognize it. But at that point, aren't we supposed to look at, number one, did we find whatever he did was diligent, and number two, the other circumstances, which not in this case, but in some other case, he was put in solitary confinement for eight months or something. Couldn't we, in the appropriate case, find that equitable tolling would apply? And don't we have to just look at whether the facts in this case are adequate for us to equitably toll the limitations? As I started by quoting Lawrence v. Florida and this Court's opinion in Waldron Ramsey v. Patoki, the focus is on whether or not it prevented him from filing a timely habeas petition. And as I've indicated, this Court has held that an obstacle to a defendant filing a timely petition in a different procedural context doesn't make it impossible for him to file a timely habeas petition. The only thing that happened here is that the clock started running sooner than he thought. And the district court, Judge Bolton, indicated that he's just basically arguing, don't apply the statute of limitations to me. He didn't ever say that it prevented him from filing a timely federal habeas petition. And this Court's already decided this issue in three cases, Buckles, in Gaston v. Palmer, and also in Randall v. Crawford. And I — Let me see if I — I want to — the principle is you say, and I think you're agreeing, that we then have to look — we could, in the right factual circumstances, grant equitable tolling here. But these are not the factual circumstances. As distinct from, it simply can't grant equitable tolling because of the underlying problem with misapplication of the State procedure, which I'm saying we could — we could forget about and still look at what happened to see if he's entitled to equitable tolling. I think this Court risks intruding upon a couple of other doctrines, which one is that you cannot review the propriety of a State court determination. I mean, we already know that is true from Allen v. Siebert in the statutory tolling context. We also — let me also remind you that in Pollin v. Stewart, the defendant there argued, the State court, you misapplied Rule 32.283. And this Court said, we can't revisit that issue. I do — I do want to say this. When it comes down to diligence, did he exercise diligence? Let's assume, for the sake of argument, that he didn't get the transcript that he thought he needed, that we're going to excuse for a second his ignorance that he was entitled to tolling, that the judge's rulings were arbitrary. He still had six months — six months and nine days to file a timely habeas petition. When you look at his habeas petition, it's nothing more than a transposition of what he had written in his direct — you know, direct appeal, his attorney on direct appeal, and what he had written in his petition for post-conviction relief and his petitions for review. He didn't need 192 days to do that. He could have done that in a couple of weeks. And when you look at it, it was really his misidentification of when the statute of limitations started and the fact that he didn't receive statutory tolling for his untimely petitions for review, that that, coupled with his lack of diligence and his desire to look for the transcript, to receive the transcript for this Court, which isn't necessary, that causes untimeliness. He wasn't diligent. I would also cite the court to Broman v. Bragano, where a petitioner dealt with a situation very similar to this, where he had a state appellate proceeding deemed untimely. And instead of filing a protective habeas petition or pursuing a federal habeas petition, he exclusively relied on the Ohio Supreme Court to give him relief. And what happened there was the Sixth Circuit said, look, that might mean you're diligent in state courts, but that's not diligence for purposes of federal habeas review. So that is a very important concept here. The defendant could have filed a protective habeas petition as soon as when he realized the Court of Appeals had said, go back to Judge Duncan and get her to give you leave, and she denied it. He could have stopped the clock with the Arizona Supreme Court. He filed the petition for review. He could have filed a protective habeas. And he had to exhaust the claims from his direct appeal. He essentially decided he would gamble everything for this one claim he had a hearing on when he didn't need a hearing. He didn't need to have a transcript for that. He filed this petition for review without it. So I also want to indicate that Mr. Fellin cited to you several times Williams v. Ryan. That dealt with a petition for post-conviction relief, one extension request, a capital case, and it was denied. And I want to make sure you understand that when it comes down to procedural defaults, we're not dealing with procedural defaults. We're dealing with whether or not a pleading is properly filed in state court. The independent and adequate state ground and the adequacy analysis of procedural default this court has held does not apply in the context of 2244D2 in White v. Martel and also in Zapata v. Walker. So that argument is off the table. This is not a case where he deserves equitable tolling under any sort of theory. And I do have to tell you, I mean, when you look at his theory, there's not a single court in the nation that has held what he is asking you to do. He is asking you to ignore the principle that Federal courts have no license to redetermine state law issues. So even if you say that this particular order that Judge Duncan issued was wrong, you still can't do anything about it because that's the end of the matter insofar as the Supreme Court is concerned for statutory tolling. And you have no license. You're looking at equitable tolling basically saying, look, did this prevent him from filing a timely Federal habeas petition? And this did not. He could have done it very quickly. So if she's made a mistake, his remedy was to get the state courts to fix it. Is that right? Right. And that's what his remedy was. I also have to tell you, I disagree. I agree with Magistrate Vos that she was basically saying that the second rationale is I gave you 45 days before. She resolved the 14 claims before that in March of 2007. He could have filed that petition for review without it. She never said, I'm going to give you an extension until you get your transcripts. My time is just about out, and I thank the Court. Thank you, Mr. Walsh. Mr. Feigin, back to you. Thank you. Thank you, Your Honor. It's about keeping the doors to the habeas court open. That's what defenses to procedural default are all about. And what the habeas court does is it always judges the propriety of State court obstacles to a State petitioner's ability to do what he needs to do to get to habeas. In Williams v. Ryan, none of the claims were exhausted because he never got an extension of time to file his PCR. The habeas court didn't miss a step. They said, we're going to treat his claims as exhausted, meaning that based on an incorrect State court ruling, they sidestepped all of the procedural requirements necessary to get to habeas. That's exactly what I'm asking in this case. With respect to the centrality of the transcript, and I know I'm over time, I just want to say that the order denying his first request for it is indefensibly arbitrary and capricious because it stands in contrast to Judge Duncan's granting him at the same time the motion for extension of time. The reason he didn't get the transcript isn't because the judge determined that he didn't need it, but it was because the judge, for reasons that remain unknown, determined that Counsel Countryman had to ask for it. And these kinds of, I think, silly impediments to a good-faith petitioner getting to habeas court have to be overlooked and the doors have to remain open under these circumstances. Thank you. Thank you, gentlemen. Mr. Walsh, the case just argued is submitted. The last case on the calendar is also submitted at this time on the briefs. We'll stand at recess. Thank you.
judges: Garbis, Tashima, Silverman